## HENRY G. HUBBARD *vs.* CORNELIUS BRAINARD.

The unwilling payment of an illegal tax to a collector, to avoid the seizure and sale of property, is not a voluntary payment.

A law imposing a tax is not to be construed strictly because it takes money or property *in invitum*, (although its provisions are, for that reason, to be strictly executed,) for it is taken as a share of a necessary public burden; nor liberally, like laws intended to effect *directly* some great public object; but fairly for the government, and justly for the citizen, and so as to carry out the intention of the legislature, gathered from the language used, read in connection with the general purpose of the law, and the nature of the property on which the tax is imposed, and of the legal relation of the tax-payer to it.

If any indistinguishable or inseparable part or proportion of an entire assessment is illegal, the whole assessment is illegal.

By the 116th section of the internal revenue act of 1864, Congress intended to tax the share of the stockholders of a corporation in the annual *net earnings,* as ascertained upon making up the annual accounts and divided, and not the gross earnings, irrespective of the expenditures incurred in conducting the business.

Under that act the assessor may properly go behind the balance sheet to see if, by fraudulent undervaluation of the assets or a fraudulent exaggeration of the liabilities, the actual net gains and profits are to any extent concealed, but he may not go behind that balance sheet to tax the gross earnings of the corporation or any special part of them, which are accounted for and embraced in it.

The appeal given by the internal revenue act of 1866 to the commissioner of the internal revenue, was not intended to be conclusive of the right of one who had paid an illegal tax, prior to the passage of the law. And the provision in that act which precluded the maintenance of an action to recover such tax, unless an appeal should be taken to the commissioner, if operative to prevent the maintenance of such an action in the courts of the United States, was not operative in respect to such actions in the courts of the states.

Where one has paid to a collector an illegal tax under coercion and involuntarily, the money remains the property of the tax-payer in the hands of the collector and he has an immediate vested right to demand and recover it, and it is not in the power of Congress by subsequent legislation to prevent its recovery. Such legislation if attempted would be contrary to the fundamental principles of the social compact and the limitation of the powers of legislation delegated to Congress. It would not be "necessary and proper" legislation, within the meaning of the constitution.

[By Hinman, C. J., and Butler, J.; Park and Carpenter, Js., dissenting.]

ASSUMPSIT, to recover money paid as income tax to the defendant, a collector of the internal revenue of the United States, and claimed to have been illegally exacted; brought to the Superior Court in Middlesex county, and tried to the court on the general issue, with the following notice:

The plaintiff will take notice that on the trial of the above cause the defendant will claim and give in evidence, that on the first day of July, 1865, and for a long time previous thereto, he had been and was a deputy collector of the internal revenue of the United States for the second collection district of Connecticut, and that as such collector he had in his hands an assessment and tax for the sum of $1,597 against the plaintiff, as a part of the income tax of the plaintiff, the same being the amount of tax due the government of the United States on that part of the amount of undivided gains and profits of the Russell Manufacturing Company and the Falls Manufacturing Company, to wit, the sum of $15,970, to which the plaintiff as a stockholder in said companies was entitled, and which was part of the plaintiff's income, over and beyond the sum of $10,000, and the defendant as such collector collected the same, and has paid it over into the treasury of the United States.

And the defendant further gives notice that he will insist upon, claim, and show to the court, that the plaintiff is prohibited and barred from having and maintaining his said action, by the provisions and limitations of the act of Congress, passed July 13, 1866, entitled "an act to reduce internal taxation, and to amend 'an act entitled an act to provide internal revenue to support the government, to pay interest on the public debt, and for other purposes,' approved June 30th, 1864, and acts amendatory. thereof," and especially by the provisions and limitations of the 19th section of said act, which is in the words following; "And be it further enacted, that no suit shall be maintained in any court for the recovery of any tax alleged to have been erroneously or illegally assessed or collected, until appeal shall have been duly made to the commissioner of internal revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury, established in pursuance thereof, and a decision of said commissioner shall be had thereon, unless such suit shall be brought within six months from the time of said decision, or within six months from the time this act takes effect, provided, if said decision shall be delayed more than six

months from the date of such appeal, then said suit may be brought at any time within twelve months from the date of such appeal." That said act by the provisions thereof was to take effect, where not otherwise provided, on the 1st day of August, 1866, and the provisions contained in said 19th section took effect on said 1st day of August, 1866, and that this action was brought on the 9th day of August, A. D. 1867.

The court made the following finding of facts.

The defendant, at the time of the payment of the tax to him by the plaintiff, was legally appointed and acting as collector of the internal revenue of the United States, in and for the district in which the plaintiff then resided.

At the time of the assessment, which was made in the year 1865, and during the year 1864 which was covered by the assessment, the plaintiff owned a majority of the stock in two manufacturing corporations, in each of which he was a director, the whole number of directors in each being three or more. During the year 1864 profits had been made by each of these companies to a greater amount than the dividends made. These profits had not been divided nor in any way set apart from the general assets of the corporations, nor appropriated for the use of the stockholders, otherwise than the law will imply from the fact of the existence of such profits.

If such profits were in law liable to assessment, an assessment was legally made. The assessor gave due notice to the plaintiff when and where appeals from the assessment would be heard, and the plaintiff did not appeal from them, either to the assessor or to the commissioner of internal revenue.

The assessor duly returned his assessment list to the collector, who thereupon demanded of the plaintiff the amount of the tax assessed therein against him, and threatened upon his refusal to coerce collection of the whole amount. The plaintiff thereupon, on the 19th day of August, 1865, paid the whole amount of the assessment to the collector, stating to him that $1,597 of the same was illegally assessed for the reasons herein set forth, and protesting in due form of law against the collection of the same.

Before this suit was brought the collector paid over to the

treasury of the United States the amount so by him collect-
ed of the plaintiff.

The profits made by the corporations referred to during
said year were to such an amount, that if the interest of the
plaintiff therein was legally subject to said assessment, the
amount of $1,597 was the proper amount of such assess
ment.

From time to time during said year, and without any in-
tention to defraud the government, unless the investment
hereinafter named constituted such fraud by implication of
law, said corporations invested said profits in part in real es-
tate, machinery and raw material, proper for carrying on their
business, and in part for the payment of debts incurred in
previous years, and the same remained so invested at the
time of such assessment and collection.

In this action the plaintiff claims to recover the said sum of
$1,597, with interest from the day of payment.

The plaintiff, on the day of its date, delivered upon oath to
Bartlett Bent, assistant assessor, his list, omitting the amount
now in controversy, which the assessor required him to add,
but he declined, and the same was then added to his list by
the assessor. Said list as so finally completed stood as fol-
lows :

| | | |
|---|---|---|
| Income at 5 per cent. | | $ 4,400 |
| " " 10 " | | 51,970 |
| Tax, - | $5,417 | |
| Less withheld, | 289 | |

Balance, $5,128

The allegations in the notice annexed to the defendant's
plea, setting forth the provisions contained in the 19th sec-
tion of the act of Congress, approved July 13th, 1866, are
true, and said act, and the provisions contained in the 19th
section thereof, took effect on the first day of August, 1866,
and have ever since been in force.

The present action was commenced on the 20th day of
August, 1867, but the court finds that the plaintiff previously,
to wit, on the 3d day of April, 1866, brought an action against

the defendant, for the same cause, to the Circuit Court of the United States, holden at New Haven, in and for the district of Connecticut, at the April term, 1866, which action was on the 3d day of June, 1867, dismissed by said court for want of jurisdiction.

Upon these facts the case was reserved for the advice of this court.

*T. C. Perkins* and *Tyler,* for the plaintiff.

*H. Willey,* for the defendant.

BUTLER, J.  The plaintiff brings his action against the defendant to recover a sum of money paid by him to the defendant under coercion, as part of a tax assessed against him by the district assessor under the internal revenue acts of the United States, and which the plaintiff claimed was illegally assessed.

There is upon the record a finding of facts by the court, and the usual reservation of the questions of law, and of " what judgment ought to be rendered in the case," for our opinion and advice.

It appears from the finding that at the time of the payment of the money to the defendant he was a legal collector of the internal revenue of the United States and had a right to collect the sum in dispute if the same was legally assessed against the plaintiff.  The principal question involved relates to the legality of the assessment, but there are preliminary questions also, and others reaching to the jurisdiction of the court.

1.  The defendant objects to the recovery by the plaintiff because the payment was voluntary.  This claim cannot be sustained.  The unwilling payment of an illegal tax to a collector, to avoid the seizure and sale of property, is not a voluntary payment.  It clearly appears in this case from the finding that the payment was made unwillingly, for it was under protest, and that the seizure and sale of property was imminent, for the officer threatened to levy if payment was

not made. If therefore the tax, or any indistinguishable or inseparable part or amount of it, was illegally assessed, the whole assessment was void, there was no sufficient consideration for the payment of the money, and it was money in the hands of the defendant for the use of the plaintiff, and he is entitled to recover it in this action.

2. The parties are at issue in respect to the rule of construction which should be applied to the act under which the assessment is made. We have no difficulty as to the rule applicable in such cases.

A law imposing a tax is not to be construed strictly because it takes money or property *in invitum*, (although its provisions are for that reason to be strictly executed,) for it is taken as a share of a necessary public burden; nor liberally, like laws intended to effect directly some great public object; but fairly for the government and justly for the citizen; and so as to carry out the intention of the legislature, gathered from the language used, read in connection with the general purpose of the law, and the nature of the property on which the tax is imposed, and of the legal relation of the tax-payer to it.

3. We come then to the application of this rule to the provisions of law under which the assessment was made, and the application of those provisions correctly construed to the facts as found by the court, in order to determine the legality or illegality of the assessment in question.

Referring to the 116th and 117th sections of the act of 1864, under which the assessment was made, we find the *general object* and *purpose* of those sections was to collect, as a tax, of the various classes of persons named, *a percentage on their respective incomes*, and that the clause which is applicable to this case is as follows: "And also all income or gains derived from the purchase and sale of stocks or other property real or personal, and the increased value of live stock whether sold or on hand, and the amount of sugar, wool, butter, cheese, pork, beef, mutton or other meats, hay and grain or other vegetable or other productions of the estate of such person, sold, not including any part thereof unsold or on hand during the year next preceding the 31st of

December, shall be included and assessed as part of the income of such person for each year; and the gains and profits of all companies, whether incorporated or partnership, other than the companies specified in this section, shall be included in estimating the annual gains, profits or income of any person entitled to the same whether divided or otherwise." And the case turns upon the construction of that clause.

The clause has received a judicial construction in this federal district. In 1865 the assessor for the first collection district of Connecticut applied to Judge Shipman for an attachment under the 14th section of the act of 1864, to compel one Lawson C. Ives to disclose and add to his list of gains and income the amount of undivided profits of the Willimantic Linen Company to which he was entitled as a stockholder, and which had been used by the company in extending their works and business, and in good faith. The judge on a full hearing dismissed the application, and assigned therefor, in substance, with other reasons, the following:

First, that the answer to the questions involved in the case must depend upon the construction of the clause in the act on which this case must also turn, and that in fixing that construction, reference must be had to the object Congress had in view, and to the settled principles of law applicable to the relations subsisting between corporations and their stockholders.

Second, that the object of Congress in the 116th to the 123d sections of the revenue act inclusive, was to raise a revenue out of the gains or profits, exceeding six hundred dollars, coming into the hands of individuals, and that they could not be taxed upon any gains or profits earned by a corporation, simply because they were stockholders; for if such had been the intention of Congress they would presumptively have said so; whereas all they had said was that if gains or profits were made they should be taxable if the stockholder was " entitled to the same."

Third, that the inquiry, what gains and profits an individual stockholder was entitled to, in any particular year, was answered by the settled rules of law, and the answer was,

that he was entitled to his proportion of such part of the profits as the directors or trustees, acting in good faith, should deem it lawful and wise and prudent to subtract from the business and set apart for division among the stockholders. The learned judge fortified this view of the case by many considerations and suggestions, for all of which we have not space. One was that a corporation might be insolvent, when it would be unlawful for it to make dividends, or, it may have lost money in previous years, so that although solvent, its capital was impaired, and in such case the directors could not declare a dividend until its capital was made up either wisely or prudently or lawfully, and in such cases the stockholder could not be said to be entitled in law or equity to a division of earnings which the directors could not in justice to creditors or a prudent regard to the safety of the business, or without disobedience to the law, divide. That the act must be so construed as to have a uniform application to the stockholders of all corporations, whether solvent or not, and that for those and other reasons stated the construction claimed by the assessor could not be given to the act without making it operate unequally and unjustly in a great variety and probably a majority of cases, and that therefore such could not have been, presumptively, the intention of Congress when they framed the clause in question.

That decision was made by a judge of acknowledged ability, and Congress seems to have recognized its correctness by altering, soon thereafter, the phraseology of the law, to meet such a case. It has been assailed, but not effectively, in the argument. And it covers this case. Although not a controlling authority, it is a persuasive one, and we should be disposed to yield to it if the facts in this case were the same.

But the facts as found by the court below are materially variant and stronger. The annual balance sheet was made up, in this case as in that, and in good faith, and the profits of the year ascertained. In that case they were not divided, but in this case they were, and the share of the plaintiff correctly returned to the assessor by the plaintiff in his list. It would certainly seem at first blush as if the requirements of

the law had been fully complied with, and that the assessor had no further duty to perform, unless to examine the balance sheet and see if it was made in good faith to the government. We all know, and Congress well knew, the general practice of corporations to make up their accounts annually or semi-annually, and we consider it too clear for argument, applying the rule of construction we have adopted, that Congress intended the income derived from a share of gains and profits of a corporation, as shown by the balance sheet made up in accordance with their charter or by-laws, or by the general custom. And that such was their meaning is also clearly indicated by the alteration made in the phraseology of the clause in question in 1866. In a general sense a stockholder is entitled to a share of all earnings as earned from day to day or month to month, although required for the purpose of carrying on the business, as he is of the stock on hand, and other property of the corporation; but not in any practical sense, as the basis of taxation as income; and it is, as we think, absurd to claim that Congress intended to tax the share of the stockholder in the gross profits or earnings, without deducting the cost of stock and expenses, or any special part of the items of the gross profit, or that they contemplated any other method of ascertaining the taxable share of the stockholder as income than by the ordinary ascertainment of the net gains or profits, by a balance sheet made up in good faith.

It may be admitted that it was proper that the assessor should go behind the balance sheet, to see if by fraudulent undervaluation of the assets, or fraudulent exaggeration of the liabilities, the actual net gains and profits were to any extent concealed. But he obviously could not go behind the sheet to tax the gross amount of the earnings, or any special part of them, at his pleasure. In this case the assessor did go behind the sheet. He did not find any undervaluation in the assets, nor anything indicating an intention to defraud the government, but he found four items of expenditure charged in the accounts, a proportionate share of which he claimed should be charged to the plaintiff as income. The facts, in relation to this, are thus briefly stated by the court.

" At the time of the assessment the plaintiff owned a majority of the stock in two manufacturing corporations, in each of which he was a director, the whole number of directors in each being three or more. During the preceding year of 1864, profits had been made by each of these companies to a greater amount than the dividends made. These profits had not been divided, nor in any way set apart from the general assets of the corporations, nor appropriated for the use of the stockholders, otherwise than the law will imply from the fact of the existence of such profits.

"The profits made by said corporations during said year, were to such an amount that if the interest of the plaintiff therein was legally subject to said assessment, the amount of $1,597 was the proper amount of such assessment.

" From time to time during said year, and without any intention to defraud the government, unless the investment hereinafter named constituted such fraud by implication of law, said corporations invested said profits in part in real estate, machinery, and raw material, proper for carrying on their business, and in part for the payment of debts incurred in previous years, and the same remained so invested at the time of such assessment and collection."

Considered by themselves the first and second paragraphs above might seem to import a finding of profits which should have been divided, but those paragraphs are introductory to and are qualified by the later one, which furnishes a full explanation of the transaction. From this paragraph it appears that the term " profits, " previously used, was used to denote *earnings*, and not *net profits*; and so the term " invested" in the last paragraph, is synonymous with " expended " or " used, " for it is employed to describe an expenditure of earnings *in a business*, for *the purchase of raw material and machinery and the payment of debts*, and not a permanent location of funds by way of investment for the purpose of rental or income.

A man cannot be said to *invest* as for rental or income when he purchases material for carrying on his business, or expends his money in the payment of his debts.

The simple facts of the case then are, that the assessor has treated certain items of expenditure made during the year, in the course of business, from the earnings, or perhaps more accurately the earnings thus expended, as gains and profits to which the plaintiff was entitled, and which therefore constituted a part of his income. We think it very clear, upon the principles to which we have referred, that the assessor erred. We can see no principle upon which it could be done unless by assuming that the gross earnings were taxable as income, or because that amount of the earnings was used in such purchases unnecessarily in order to defraud the government, and such use and fraud are not found.

There can be no *implication* of bad faith, or intent to defraud the government, in this case, for in the first place, the law was not approved until the 30th of June, 1864, and it appears from the finding that the expenditures were made from time to time during the year and of course a part of them, and for aught that appears the principal part, before the law existed. Clearly there can be no implication of an intent to act in fraud of the law when there was no such law in existence.

In the second place, it is found that the purchases were all of articles proper for carrying on the business of the company, or for the payment of debts, and it is not found that materials or machinery were purchased in unusual or unnecessary quantites or to extend the works or business.

In the third place, it is utterly absurd to say that the payment of the debts of the corporation will justify an implication of fraud against the government, or the assessment of a share of the money so paid as income to which the plaintiff was entitled. The assessment of that share of the earnings seems to us utterly indefensible upon any rule of construction or view of the law which can possibly be taken ; and as it constitutes an indistinguishable and inseparable part and proportion of the entire assessment, it renders the whole illegal, whatever may be said in relation to the other items composing it.

But in the fourth place, there is a broader view to be taken

of this case as presented by the finding which is perfectly conclusive. It is not expressly found that there was an annual balance sheet made in January, 1865, but we have presumed that there was, and think that we are bound so to presume. It is found, first, that dividends were declared, and presumptively according to the common course of business. Second, the law requires such corporations to make up their accounts annually in January or July and ascertain the condition of their affairs and make a certificate showing that condition on the 1st day of January or July, and also specifically " the amount of capital actually paid in; the cash value of its real estate; the cash value of its personal estate; the cash value of its credits; and the amount of its debts,"—which certificate they are required to deposit with the town-clerk for record, on or before the 15th of February or August of the same year. This law has been in existence more than thirty years and the universal practice has been to make up the annual accounts before declaring dividends. Looking at the requirements of the law, the universal course and custom of business, and the fact found that a dividend was made, we feel bound to presume that this company made up their accounts and struck their balance in January, 1865, and that the several items purchased, upon which the assessment in question was made, were embraced in those accounts as a part of the assets of the company, to offset so much of the earnings as were expended in making them, and that the debts paid would have appeared among the liabilities of the company to offset the earnings used in paying them, if they had not been paid, and that therefore the balance actually found was all to which the plaintiff was entitled within any possible meaning of the law. We think too that, as an omission to make up their annual accounts or to include in them the items assessed, would be clear evidence of an intent to defraud the government, the fact of such an omission would have been found if it had existed.

These considerations satisfy us that the assessment was illegal.

The defendant further insists that this suit is barred by

the provisions of the 19th section of the act of July 13th, 1866.

That act took effect August 1st, 1866, and at that time there was an action pending in the Circuit Court for the district of Connecticut, instituted by the plaintiff at the previous April term, for the recovery of the same money which is sought to be recovered in this action. That action was dismissed by the Circuit Court, at its June term, 1867, pursuant to the provisions of the section referred to. The plaintiff thereafter, on the 20th of August, 1867, instituted this suit in the Superior Court.

The defendant claims that this suit is barred by the act referred to, because no appeal was taken to the commissioner of the internal revenue before bringing the action, pursuant to the 19th section aforesaid.

The provision of the section referred to is as follows: "That no suit shall be maintained in any court for the recovery of any tax alleged to have been erroneously or illegally assessed or collected, until appeal shall have been duly made to the commissioner of internal revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof, and a decision of said commissioner shall be had thereon, unless such suit shall be brought within six months from the time of said decision or within six months from the time this act takes effect."

The provision in relation to the appeal to the commissioner of internal revenue, referred to in the foregoing clause, so far as the same is applicable and material is as follows: "That the commissioner of internal revenue, subject to regulations prescribed by the Secretary of the Treasury, shall be, and is hereby authorized, on appeal to him made, to remit, refund and pay back all taxes, erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that shall appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected."

The last section does not appear upon its face to confer upon the commissioner of internal revenue any authority to

Hubbard *v.* Brainard.

hear and determine the legality and justice of an assessment, but of itself simply confers power upon him as a disbursing officer to refund monies illegally assessed and collected. Perhaps it was intended that the power to hear and determine such a question should be conferred, and the manner of such appeal and hearing be fixed, by the regulations prescribed by the Secretary of the Treasury, but as to that we are not advised. The case contains no evidence that any such regulations were ever prescribed, or that the plaintiff was ever advised thereby of the manner in which he could appeal or be heard.

Now the claim of the defendant is, that if the plaintiff had a right of action against the defendant for wrongfully taking his money by the coercion of an illegal assessment, that right was barred by his simple failure to make an application to the commissioner of internal revenue to have the money refunded before bringing his action, pursuant to the provisions of the 19th section of the internal revenue act. We are not satisfied that this claim is correct. In the first place we think that the act was prospective and not retrospective, and that Congress did not intend that it should retroact to affect an existing vested right. In the second place, we are not satisfied that the law should be construed to operate any farther than to exclude the plaintiff from maintaining a suit upon the claim in the courts of the United States. *Carpenter* v. *Snelling*, 97 Mass., 452; *Griffin* v. *Ranney*, 35 Conn., 240. And in the third place, if, as we assume, the money so taken by the defendant illegally from the plaintiff, was the money of the plaintiff in the hands of the defendant, which by the principles of the common law he had a *vested right* to recover, it was not competent for Congress by subsequent legislation to exclude the plaintiff from his right to apply to the Superior Court of this state, (of which the parties were both citizens,) for its recovery, or limit the time within which he should bring such action.

For these reasons the Superior Court must be advised to render judgment for the plaintiff.

In this opinion HINMAN, C. J., concurred. PARK and CARPENTER, Js., dissented.