THE FIRE DEPARTMENT OF THE CITY OF NEW YORK, Respondent, *v.* GEORGE A. STANTON, Appellant.

1. NEW YORK CITY — SPECIAL TAX UPON AGENTS OF ASSOCIATIONS OF INDIVIDUAL FIRE UNDERWRITERS NOT INCORPORATED BY LAWS OF THIS STATE — DOMESTIC ASSOCIATIONS. The provision of section 523 of the New York City Consolidation Act (L. 1882, ch. 410), requiring every person who shall act in the city and county of New York as agent for any association of individuals, not incorporated by the laws of this state, in effecting insurance against loss or injury by fire in that city and county, to pay annually to the city fire department two per cent of the amount of premiums received by him, extends to the agent of domestic or resident non-incorporated associations of individual underwriters.

2. APPLICATION OF STATUTE TO "AMERICAN LLOYDS." An agent of the "American Lloyds," an association of individual fire underwriters not incorporated by the laws of this state, is not exempted from the application of section 523 of the New York City Consolidation Act by the fact that no such association was in existence when the section was framed, or by the fact that the association was authorized to do business by a subsequent law of the state.

3. STATUTE NOT VIOLATIVE OF FOURTEENTH AMENDMENT. The imposition, by section 523 of the New York City Consolidation Act, of what is in effect a license fee upon the entire class of persons acting within the city as agents for associations of individual fire underwriters not incorpo

29

rated under the laws of this state, while the agents of domestic fire insur-ance corporations are not subjected thereto, does not render the section violative of the fourteenth amendment of the Federal Constitution, as involving the unequal application of a tax.

4. CONSTRUCTION OF FOURTEENTH AMENDMENT. While the fourteenth amendment of the Federal Constitution secures to all persons in the pur-suit of a lawful avocation the equal protection of the laws, it is not to be construed as restricting the state in its exercise of the power to charge its citizens with burdens of taxation, differing in their imposition according to the manner in which the particular avocation of the citizen touches and concerns the public interests.

*Fire Dept.* v. *Stanton*, 38 App. Div. 640, affirmed.

(Argued May 11, 1899; decided June 6, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 13, 1899, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William B. Ellison* for appellant. The legislature did not intend to tax the representatives of domestic or resident asso-ciations such as the "American Lloyds." (L. 1814, ch. 49 ; L. 1824, ch. 277; L. 1849, ch. 178; L. 1886, ch. 825; L. 1875, ch. 465; *Matter of Breslin*, 45 Hun, 210; *Matter of Bd. of Street Opening*, 12 Misc. Rep. 526.) The court will not permit a literal reading of the law in question to override the apparent intent of the enacting power. (*Vail* v. *B. R. Co.*, 147 N. Y. 377; *People ex rel.* v. *Lacombe*, 99 N. Y. 43 ; *People ex rel.* v. *Potter*, 47 N. Y. 375; *Hayden* v. *Pierce*, 144 N. Y. 512; *Bixby* v. *Mayor, etc.*, 61 Hun, 490; *H. I. Foundry* v. *Sanders*, 77 Hun, 432; *People ex rel.* v. *Gilon*, 76 Hun, 346; *People ex rel.* v. *Butler*, 147 N. Y. 164.) If the law in question does apply to the defendant, then the same is unconstitutional, in that the tax thereby provided for is unequal in its application, and in consequence is in violation of the fourteenth amendment of the Constitution of the United States. (*People* v. *N. Y. F. D. D. Co.*, 11 Abb.

[N. C.] 40; *State R. R. Tax Cases,* 92 U. S. 575; *Worth* v. *W. & W. R. Co.,* 45 Am. Rep. 679; *R. R. Tax Cases,* 13 Fed. Rep. 722; *E. C. Co.* v. *S. R. R. Co.,* 18 Fed. Rep. 385; *N. P. R. Co.* v. *Walker,* 47 Fed. Rep. 681; *Giozza* v. *Tiernan,* 148 U. S. 657; *B. G. R. R. Co.* v. *Penn,* 134 U. S. 232; *K. R. R. Tax Cases,* 115 U. S. 321 · *Matter of Sherwell,* 125 N. Y. 376.)

*William L. Findley* for respondent. The action is properly brought in the name of the fire department of the city of New York. (L. 1882, ch. 410, §§ 34, 465, 523–531; *Fire Dept.* v. *Stanton,* 28 App. Div. 334.) The imposition of this tax is within the constitutional powers of the legislature. (*Trustees, etc.,* v. *Roome,* 93 N. Y. 313.) Defendant is liable to the tax or duty in question. (L. 1892, ch. 690, § 57; *Ward* v. *Maryland,* 12 Wall. 418; *Wiley* v. *Palmer,* 14 Ala. 627; *Oliver* v. *Washington Mills,* 93 Mass. 268.) This action is properly brought against the defendant. (L. 1882, ch. 410, §§ 523–531.) The receipt of premiums by the defendant was sufficiently shown. (Code Civ. Pro. § 191; L. 1896, ch. 559.) There is no inequality of taxation involved in applying this law to the defendant. (*Trustees, etc.,* v. *Roome,* 93 N. Y. 313.) It was not error for the court to rule that the affirmative was with the defendant. (Code Civ. Pro. § 500; *Miller* v. *McCloskey,* 1 Civ. Pro. Rep. 252; *Leary* v. *Boggs,* 3 Civ. Pro. Rep. 251; *Luce* v. *Alexander,* 17 J. & S. 202; 100 N. Y. 613.) There has been no *laches* in the attempt to enforce this tax against the defendant. (L. 1882, ch. 410, § 524.)

GRAY, J. The plaintiff, acting under the authority conferred by section 523 of the New York City Consolidation Act of 1882, demands that the defendant be decreed to account to its treasurer for all premiums for insurance against loss .or injury by fire, received by him as agent, in the city and county of New York, for or on behalf of an association of individuals not incorporated by the laws of this state, and that he be required to pay two per centum of the amount of

premiums collected. The actual language of the statute, upon whose provisions the plaintiff relies to enforce this claim, is that "there shall be paid to the treasurer of the fire department, for the use and benefit of said fire department, on the first day of February, in each year, by every person who shall act in the city and county of New York as agent for or on behalf of any individual or association of individuals, not incorporated by the laws of this state, to effect insurances against losses or injury by fire in the city and county of New York, although such individuals or association may be incorporated for that purpose by any other state or country, the sum of two dollars upon the hundred dollars, and at that rate upon the amount of all premiums," etc.

The defendant, in his defense, objects, primarily, that he is not liable to the plaintiff's demand; inasmuch as he was the general manager and the attorney in fact of an organization of underwriters, under the name of the "American Lloyds," and did not effect insurances himself, or receive premiums. Such insurances, he says, were effected through brokers and the premiums therefor were paid to the underwriters. But this objection is disposed of by the finding of the trial judge, that the defendant acted as agent for the association of underwriters in question and received premiums for effecting insurance. This finding is not only justified by the evidence; but, partly, by the averment in the answer that "as general manager and attorney in fact * * * he has received premiums of insurance effected on property in the city of New York."

The more serious objection, which is made to this demand, is two-fold in its nature. It is insisted that the law in question was not intended to, and does not, apply to the defendant, or, if it be held to so apply, then that it is violative of the fourteenth amendment of the Federal Constitution by reason of the unequal application of the tax. With respect to his first point, that the law does not apply to him, the defendant has resort to the history of this species of legislation on our statute books and, as the result of his examination of pre-

vious statutes, deduces the conclusion that, as the legislative intent was, originally, to reach the agents of non-resident insurers only and as, at the time of the enactment of this law, there were no such associations as the one represented by him, it could not have been designed to operate upon the representatives of such domestic, or resident, associations. Of course, if we read the provisions of the law as they are, they very plainly cover the case of the defendant; for there is no qualification of the language in its application to "every person who shall act * * * as agent for or on behalf of any * * * association of individuals not incorporated by the laws of this state," etc.

While in the construction of a law, which presents a difficulty in administration, by reason of its purpose or object being rendered doubtful through inartificial, or defective, expression, reference to the historical growth of the legislation, or to contemporaneous exposition, is often, and very properly, made and a more or less sure guide thus secured in the delicate work of construction, I should say that it is with questionable right, if with any at all, that the courts resort to such aids, when the law is plain in its reading and appears to offer no doubt upon its face. Where construction is not called for, it is the province of the courts to administer the law as it reads and if the statute in its operation is complained of as working inequitably, or differently from some presumed purpose leading to its enactment, the complaint should be addressed to the legislative body and the cure sought there. But I think that if we should follow the defendant in his historical investigations, we should still have to differ with him in reaching a conclusion, and, perhaps, the importance of the question warrants us in further discussion.

The first act, which was passed in 1814, (Chap. 49, Laws of 1814), made it "unlawful for any person residing in a foreign country, or for any association or company of persons residing in any foreign country, or for any corporation established in any foreign country, or for any person * * * on behalf of such * * * to make any contract of insurance against

loss or injury by fire," etc.   This was a plain exclusion of corporations and of citizens of foreign countries from the transaction of that business within this state and it is needless to infer the reasons, from the reference in the preamble to an English company, which, at that period of our existence as a people, may have led to such legislation.   In 1824 another act was passed, (Chap. 277, Laws of 1824), which required "every person, who shall hereafter act as agent for any individuals, or association of individuals, not incorporated by the laws of this state, (although the same may be incorporated by the laws of any other state), for the purpose of effecting insurance   *   *   *   to pay into the treasury of the state ten per cent on the amount of all premiums."   The preamble of this act gives the reason for its passage, in that "associations or companies of individuals, resident without this state and not incorporated by its laws, do, by reason of agents,   *   *   * effect many insurances   *   *   *   thereby securing to themselves all the benefits, without being subject to any of the burdens of insurance companies, regularly incorporated," etc. The obvious purpose of this legislation was to promote and to strengthen the development of domestic corporations, by removing the element of an unfair competition on the part of corporations, or associations, organized in other states and an additional politic purpose may have been in the direction of a promotion of the safety of the citizen in insuring.   It imposed a practically prohibitory license fee upon the transaction in this state of an insurance business, unless by corporations formed under its laws.   In 1837, (Chap. 30, Laws of 1837), the existing law was so amended, in certain features, as to effect a reduction of the license fee from ten to two per cent, and, by implication, to permit individuals or corporations resident in foreign countries to transact the business of insurance in this state, under certain conditions.   Finally, in 1849, (see chaps. 178 and 308, Laws of 1849), the law upon the subject seems to have been again reshaped.   Previous restrictions upon the doing of a fire insurance business here by foreign insurers were removed and the present plaintiff was

made the beneficiary of the fee to be paid by the agents of all insurers not incorporated by the laws of this state. Through subsequent years the law was amended, in one or another respect, until it was embodied in the New York City Consolidation Act, in its present form; but, essentially, it is the same in its requirements as in the early act of 1824.

I think a consideration of past legislation upon this subject makes it apparent that the present law sums up a state policy, which, admitting of the transaction in this state of the business of fire insurance by agents of insurers, who might be nonresidents, or incorporated without the state, imposes a burden upon the privilege, in the form of a license fee, as a means of producing some equality of conditions between them and the incorporated companies of the state. To quote from the exceedingly able and well-expressed opinion of Mr. Justice BARRETT, at the Appellate Division, when speaking of the evil which the legislature adverted to in the preamble of the act of 1824, (*supra*), and of the means then adopted for its cure, "the problem was to check or modify the evil. \* \* \* This could only be done constitutionally, in the manner devised, by putting the proposed tax burden upon the agents of residents as well as of non-residents; and so the burden was imposed in general terms upon all. This left all citizens, non-resident as well as resident, free to transact the business as principals without the imposition of the burden upon any of them. It was only when they attempted to transact the business by means of agents that the burden was imposed; and the burden was then imposed upon the agents."

While the condition, which the law of 1814 sought to remedy, by way of inhibition, was that of the transaction of an insurance business in this state by "foreigners," the subsequent legislation was in the line of a broader policy of subserving state ends by distinguishing against the business of those insurers, who could maintain an unfair competition against state corporations, burdened with the many conditions of their organization. To do this constitutionally, it was necessary that the law should be equally applicable to all citi-

zens, whether within or without the borders of the state. In view of the general terms into which the law was gradually resolved, and which made it of uniform application to the agents of all individuals, or associations of individuals not incorporated by the laws of this state, I think the argument has too frail a support, which seeks to maintain that it was not intended to apply to the case of the defendant. It, undoubtedly, was originally the design of the legislature to reach the agents of insurers resident in, or incorporated by the laws of, other states and countries; but for the accomplishment of the purpose of discouraging such, or, rather, of rendering the conditions more equal between them and the insurance companies of the state, it became necessary to frame a law of general application and one which would not be open to attack for discriminating in favor of one citizen as against another, or of the citizens of the state as against those of the other states of the Union in the prosecution here of a similar avocation. Thus the law became what it is and, as such, applicable to every person who should act as the agent of a non-incorporated association of individuals.

Nor is it of any importance to the argument that such an association as the "American Lloyds" was not in existence, when the section of the New York City Consolidation Act was framed; or that it was authorized to do business by a subsequent law of the state. The name "American Lloyds" is borrowed from England; where the term "Lloyds" had been used for many years to designate a society or establishment of underwriters in London. Its present use here has no other signification than to designate a partnership, or an organized association, of individual underwriters. (Sec. 57, chap. 690, Laws of 1892.) It is not a corporation formed under the laws of this state and as a body of individuals, associated for the purpose of doing a fire insurance business and transacting it through the defendant's agency, however he may be designated in his office, it is brought within the intent and the operation of the law in question.

The next point made by the defendant against the plaintiff's

claim is that "the law   *   *   *   is unconstitutional, in that the tax therein provided for is unequal in its application and, in consequence, is in violation of the fourteenth amendment of the Constitution of the United States." It is argued, in effect, that the legislation arbitrarily discriminates against a class of citizens pursuing a lawful avocation, in that it compels those who act as agents for unincorporated associations to pay a tax, while those who act as such for domestic corporations are exempt. It is urged, in substance, that the incorporated and unincorporated associations have equal rights at law to carry on their business and that the calling of the respective agents is the same and, hence, that the tax imposed is an unequal exaction and effects an arbitrary classification. It may be observed that the statute imposes, not exactly a tax, but a license fee, to be paid by those persons who, as agents, seek to build up a fire insurance business in the city of New York for principals, who have not incorporated under the state laws. Its provisions are directed not merely to the agents of non-residents, or of foreign associations; but to all agents of the class. The distinguishing and substantial feature, which underlies the exaction of the license fee, is the non-incorporation of the principals. It is quite needless to discuss the legislative motive, when it is apparent in the difference of the situation between persons acting as agents for non-incorporated associations in the fire insurance business and domestic corporations, organized for such purpose; the former receiving all the benefits, without being subject to any of the burdens of the latter. The legislature of the state is not without power to impose a tax on a business in the form of a license fee, when it deems such to be warranted by considerations of public interest and for the general welfare, and the only limitation upon its exercise of power, in that respect, is that there shall be no discrimination or oppression, and that the burden shall be equally charged upon all persons in similar circumstances. Equal protection and security are guaranteed to all persons under like circumstances in the enjoyment of their personal and civil rights. How have these obvious prin-

30

ciples of our government — made familiar through repeated interpretations by the United States Supreme Court of the fourteenth amendment — been violated, or set at naught? Is there anything unreasonable in a classification by the statute in question of the business of fire insurance by unincorporated associations as one deserving of different legislative recognition and treatment from that conducted by a corporation organized under the state law? Is it not manifest that they differ in essential respects and bear separate relations to the state? The classification is based upon the reasonable ground of a difference, which bears some just relation to the attempted classification and, therefore, cannot reasonably be said to affect that equality of rights secured by the Federal Constitution. The fourteenth amendment of the Federal Constitution secures to all persons in the pursuit of a lawful avocation the equal protection of the laws; but that is not to be construed as restricting the state in its exercise of the power to charge its citizens with burdens of taxation, differing in their imposition according to the manner in which the particular avocation of the citizen touches and concerns the public interests.

It is to be observed that this statute does not impose the burden of a tax upon the individual insurers, or the unincorporated association of individual insurers. It exacts from every person, who acts as agent for such, the payment of a license fee, as a condition of his right to do so. This condition bears uniformly upon all citizens, who engage in that calling, whether resident or non-resident, and what discrimination may be found in the legislation, as previously suggested, is aimed at the kind of business which the one or the other citizen undertakes to represent and to promote. The merely general similarity of the occupation is not the test, in a consideration of the workings of the law; it is the character of the agency as determined by the business for which it is established. As it reads, the act operates uniformly upon all who, within the state, act as agents for unincorporated associations and for the legitimate purpose, as suggested by Mr. Justice

BARRETT, of encouraging corporate organization and of preventing an advantage from being obtained over our domestic corporations.

I think that sufficient has been said, in connection with the discussion which the question has received below, to justify the conclusion that this act was a constitutional exercise of legislative power and that it applies to the case of the defendant.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.