## EPPSTEIN v. STATE.

(Court of Civil Appeals of Texas. Austin. May 31, 1911. On Rehearing, July 1, 1911.)

1. STATUTES (§§ 174, 175*)—CONSTRUCTION—GENERAL RULES—APPLICATION.

Rules of statutory construction are intended to aid courts in arriving at a proper conclusion, but no particular rule should be followed to the exclusion of all others, when to do so leads to illogical deductions.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 254; Dec. Dig. §§ 174, 175.*]

2. STATUTES (§ 245*)—REVENUE LAWS—CONSTRUCTION.

Revenue laws are to be construed fairly for the government and justly for the citizen, and so as to carry out the intention of the Legislature gathered from the language used, read in connection with the general purpose of the law.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 326; Dec. Dig. § 245.*]

3. INTOXICATING LIQUORS (§ 91*)—TAXES—AMOUNT—"GROSS RECEIPTS."

Under Acts 30th Leg. 1st Ex. Sess. c. 18, § 11, requiring every one engaged in the wholesale liquor business to make a quarterly report showing the gross amount collected and uncollected from all sales made during the quarter next preceding, and to pay an occupation tax for the quarter beginning on the date of the report equal to one-half of 1 per cent. of "said gross receipts," the term "gross receipts," though ordinarily meaning the gross amount of cash received, here includes the gross amount collected and uncollected of all the sales, on which amount the percentage must be computed to determine the tax.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 97; Dec. Dig. § 91.*

For other definitions, see Words and Phrases, vol. 4, p. 3174; vol. 8, p. 7675.]

Appeal from District Court, Travis County; Chas. A. Wilcox, Judge.

Action by the State against Milton L. Eppstein. From a judgment for plaintiff, defendant appeals. Affirmed.

I. M. Standifer, for appellant. Jewel P. Lightfoot, Atty. Gen., James D. Walthall, Asst. Atty. Gen., and Jno. W. Brady, Asst. Atty. Gen., for the State.

JENKINS, J. The sole issue in this case is the proper construction of section 11 of chapter 18, Acts of the 30th Legislature, p. 485, which reads as follows: "Each and every individual company, corporation or association created by the laws of this state or any other state, who shall engage in his own name or in the name of others, or in the name of its representatives or agents in this state in the business of a wholesale dealer or a wholesale distributor of spirituous, vinous or malt liquors or medicated bitters ca-

pable of producing intoxication, shall on or before the first day of July, 1907, and quarterly thereafter, make a report to the Comptroller of Public Accounts, under oath of the individual, or of the president, treasurer or superintendent of such company, corporation or association, showing the gross amount collected and uncollected from any and all sales made within this state of any of said articles during the quarter next preceding. Said individuals, companies, corporations and associations, at the time of making said report shall pay to the Treasurer of the State of Texas, an occupation tax for the quarter beginning on said date, equal to one-half of one per cent. of said gross receipts from said sale as shown by said report. A wholesale dealer or distributor, within the meaning of this section, is any individual, company, association or corporation selling any of the articles hereinbefore mentioned either in his own or in the name of others or in the name of its representatives or agents to retail dealers, or who deliver on consignment to their agents for retail." The contention of the state is that appellant's occupation tax for each quarter should be based upon his total sales, collected and uncollected, made in the preceding quarter. The contention of appellant is that his tax for each quarter should be based upon the amount collected by him during the preceding quarter from sales made during said quarter. The trial court rendered judgment for the state upon the following conclusion of law: "I conclude that it was clearly the intention of the Legislature in enacting section 11, c. 18, of the Acts of 1907, to impose a tax of one-half of 1 per cent. upon the total amount of sales made, whether the consideration of such sales were collected or uncollected."

[1, 2] While we agree with the learned trial court as to the proper construction of this statute, we confess to some difficulty in arriving at a conclusion in the matter. For this reason, if for no other, should we follow the rule of construction urged by able counsel for appellant, we would be compelled to decide in his favor; that is to say, that, if the subject of taxation is not clearly embraced in the very words of the statute, when such words are construed most unfavorably to the state, such subject should be excluded from its terms. Rules of construction are intended to aid courts in arriving at a proper conclusion, but no particular rule should be followed to the exclusion of all others, when to do so leads to illogical deductions. "Artificial rules of construction have probably found more favor with courts than they have deserved." Cooley on Taxation, 449. The rule of strict construction has in some instances been stretched to the extent of excluding from the provisions of a statute that which everybody, except the learned court, knew was undoubtedly included within it.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

As regards tax laws, Mr. Cooley says: "In some of the earlier cases they seemed to have been looked upon as things which, like obligations entered into with a usurer, were to be confined to the very letter of the bond, if enforced at all, and every intendment was made against them and against proceedings under them." Id. 449. We think that the true rule for the construction of revenue laws was announced by the Supreme Court of Connecticut, viz.: "Fairly for the government and justly for the citizen, and so as to carry out the intention of the Legislature gathered from the language used, read in connection with the general purpose of the law." Hubbard v. Brainard, 35 Conn. 563.

[3] Applying this rule to said section 11, we find that the language used in the concluding part of said section is: "Shall pay to the Treasurer of the State of Texas an occupation tax for the quarter beginning on said date, equal to one-half of one per cent. of said gross receipts from said sale as shown by said report." It is contended that "gross receipts" ordinarily means the gross amount of cash received. This may be admitted, and yet it is true that gross receipts sometimes means more than money that has actually come into the hands of the party to be taxed. In Railway Co. v. Commonwealth, 104 Pa. 82, it was held that gross receipts was equivalent to gross earnings. This was under a statute taxing gross receipts. By gross proceeds would ordinarily be understood to be meant the amount for which a thing had been sold, but it is laid down that by this term as used in an insurance policy "is meant the market price at which the merchant, after paying freight, duty and hauling charges, can sell the goods to the consumer at the port of arrival." Lamar Ins. Co. v. McGlashen, 54 Ill. 513–518, 5 Am. Rep. 162. In the clause of said section 11 above quoted, the language used is, "said gross receipts" as shown by said report. By referring to the previous part of said section, we find that no mention is made of "gross receipts," but that the thing to be reported is the gross amount of sales. Said report is not required by the language of the statute to show the amount of sales on which collections have been made separately from the amount of such sales which are uncollected, but only the gross amount of sales collected and uncollected. In every other section of this act, unless it be section 12, which reads as does section 11, the report required clearly furnishes the basis for the tax, and is required for that purpose and for that purpose only. If it be not true that the uncollected portion of the sales of liquors is to be taxed, why should the same have been required to be included in said report? If appellant's contention be correct, the use of the word "uncollected," so far as the purpose for which this statute was enacted is concerned, is meaningless; and courts should not, when it can be avoided, impute to the Legislature the use of meaningless words or phrases. We have referred to the purposes for which this statute was enacted. Omitting sections 11 and 12, it is plain that its purpose was to require those engaged in the callings therein mentioned to pay an occupation tax in proportion to the business done. If it be said that "gross receipts," as used in other sections of this act, means cash received, this purpose is still effected from the fact that, though uncollected sales made during any quarter would not be included in the report for that quarter, still such report must show the cash received during said quarter including that received from the sales made in any previous quarter, and the uncollected sales for any quarter would be accounted for in the receipts of a subsequent quarter when the same were collected. But not so as to liquor dealers. They are not required to report the gross receipts during any quarter, but only their gross sales, and they are required to pay only on such portion of their gross receipts as are shown by such reports; so that if "gross receipts," as used in this section, means only cash received during the quarter from sales made during said quarter, they are not required to pay at all on sales made during any quarter for which collections are not made during said quarter. Such is the contention of appellant. As shown by appellant's report, about 60 per cent. of the business done by him since said law went into effect has been by sales for which no collections were made during the quarter in which such sales were made. As suggested by the Attorney General, if appellant's contention be correct, by selling during the first month of the quarter or 90 days time, during the second on 60 days, and the third on 30 days, he would escape taxation altogether. As supporting the contention that the purpose of this statute was to levy a tax in proportion to the business done, it will be seen that in nearly every instance the business taxed is one that is usually conducted on a cash basis. The one exception is the production of oil. Oil wells in this state may be owned by parties whose refineries are outside of the state; and, if the tax was based on sales for cash and on a credit, no tax might be due, for they might make no sales. To avoid this the tax is levied on the market price of the product, without reference to whether or not the same is ever sold.

It is contended that in section 9 of this act the expression, "gross receipts," is used in such manner as to show that the Legislature did not mean thereby amounts uncollected, and therefore it must be presumed that they did not intend to include uncollected amounts in that phrase as used in section 11. The answer to this is that in section 10 the words "gross receipts" are expressly shown to include amounts both paid and uncollected, and so the matter cannot be settled in this manner. The words "gross receipts," as used in section 11, when taken in connection with the

remaining portion of said section, are ambiguous, but, when taken in connection with the evident purpose of the statute we think they should be construed as meaning gross sales; and, so believing, we affirm the judgment of the trial court.

Affirmed.

### On Rehearing.

At the request of appellant we make the following further finding of fact, viz.: Appellant tendered to the state of Texas before the institution of this suit, and at the times required by law, each of the sums admitted by him to be due, and the amount which was due, if he is required to pay only on sales made during any quarter for which collections were made during such quarter, but did not tender any amount on uncollected sales.