(95 Misc. Rep. 386)

### ADAMSON, City Fire Com'r, v. SCHREINER.

(Supreme Court, Trial Term, New York County. December, 1915.)

1. INSURANCE ☞18—REGULATION—FOREIGN INSURERS—EXCLUSION.

The state may impose stringent conditions on foreign insurance companies incident to every transaction within its limits of the insurance business, and may even go so far as to exclude them altogether.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 13, 14; Dec. Dig. ☞18.]

2. INSURANCE ☞20—FOREIGN COMPANIES—LIABILITY—LICENSE FEES—"REINSURANCE."

Greater New York Charter (Laws 1901, c. 466) §§ 799, 800, respectively provide that there shall be paid to the fire commissioner, as treasurer of the fire department, by every person who shall act in the state of New York as agent for or in behalf of any individual or association of individuals not incorporated by the laws of the state, to effect insurances, a percentage of the premiums, and that in each year a verified account shall be filed. Defendant was the agent of a foreign company doing business as reinsurer. *Held*, that since to allow defendant to escape on the ground that reinsurance did not fall within the purview of the charter would enable it to escape payment of most of its taxes, and as the word "reinsurance" from long usage has acquired a fixed meaning and is covered by the term "insurance," defendant was liable for the percentage.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 16, 18–22; Dec. Dig. ☞20.

For other definitions, see Words and Phrases, First and Second Series, Reinsurance.]

3. INSURANCE ☞20—FIRE INSURANCE—POLICIES—"AGENT."

The manager of a foreign insurance company, which writes reinsurance policies in this state, is agent within such provisions; the statute declaring that the term "agent" in the charter shall include an acknowledged agent or surveyor, or any person who shall in any manner aid in transacting the insurance business.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 16, 18–22; Dec. Dig. ☞20.

For other definitions, see Words and Phrases, First and Second Series, Agent.]

Action by Robert Adamson, as Fire Commissioner of the City of New York, against Carl Schreiner. Judgment for plaintiff.

Lamar Hardy, Corp. Counsel, of New York City (J. A. Stover, of New York City, of counsel), for plaintiff.
William B. Ellison, of New York City, for defendant.

COHALAN, J. Plaintiff, as fire commissioner of the city of New York, brings this action for an accounting against the defendant as

---

the agent of the Munich Reinsurance Company, a foreign corporation. If the plaintiff should succeed, the defendant would be required to account for all premiums which have been received by him, or by any person for him, or which have been agreed thus to be paid, for any insurance against loss or injury by fire in the city and county of New York, and, further, he would be required to pay to the plaintiff the sum of $2 upon every $100 upon the amount of all such premiums which directly or indirectly have been received by him as such agent. The suit was instituted pursuant to sections 799 and 800 of chapter 466 of the Laws of 1901 (Greater New York Charter, as amended). The statute reads as follows:

"Sec. 799. There shall be paid to the fire commissioner as treasurer of the fire department, for the use and benefit of said fire department, on the first day of February, in each year, by every person who shall act in the city of New York, as agent for or on behalf of any individual or association of individuals, not incorporated by the laws of this state, to effect insurance against losses or injury by fire in the city of New York, although such individuals or association may be incorporated for that purpose by any other state or country, the sum of two dollars upon the hundred dollars, and at that rate upon the amount of all premiums which, during the year ending on the next preceding first day of September, shall have been received by such agent or person, or received by any other person for him, or shall have been agreed to be paid for any insurance against loss or injury by fire in the city effected, or agreed to be effected, or promised by him as such agent.

"Sec. 800. Every person who shall act in the city as agent as aforesaid shall, on the first day of February, in each year, render to the fire commissioner as treasurer of the fire department a just and true account, verified by his oath, of all such premiums which, during the year ending on the first day of September preceding, shall have been received by him, or by any person for him, or which shall have been agreed to be paid for any such insurance effected, or agreed to be effected, or promised by him."

The plaintiff, under sections 808–812 of the charter, is directed to distribute the moneys collected by him from foreign insurance companies among "the trustees of the exempt firemen's benevolent fund of the city of New York." The money is used for the benefit of firemen's homes and the widows and orphans of deceased firemen.

It is the contention of the defendant (a) that the statute, practically construed, refers to insurers only and not to reinsurers; (b) that it does not by its terms apply to the agent of a reinsurance company, and that it may not be amplified by implication; (c) that to construe the section of the charter in question, as is contended for by the plaintiff, would result in double taxation; and (d) that the defendant is not an agent within the meaning of the provision of the charter in question.

The Munich Reinsurance Company has done a profitable business in the state of New York. In 1909 the company collected net premiums aggregating $590,000; in 1912 it collected net premiums aggregating $755,695; and it appears that the business done up to the commencement of the suit was constantly increasing. For the privilege of doing business in the city of New York it has paid nothing whatever to the city, and only one-half of 1 per cent. of the premiums collected by it to the state. It would seem, therefore, that it has an unfair advantage over domestic companies, which pay 1 per cent. to the state.

The issues herein practically arise de novo, as the plaintiff and his predecessors have hitherto neglected to institute legal proceedings for the collection of the license fees provided in the statute to be paid by the agents of foreign insurance companies.

[1] That the state may impose stringent conditions upon foreign companies incident to the transaction within its limit of the business of insurance has long been the settled law of this state. People v. Fire Ass'n of Philadelphia, 92 N. Y. 311, 44 Am. Rep. 380. In that case the court said:

"The state, having the power to exclude foreign corporations, determines to do so unless they will submit to certain conditions. It meets the applicant on the border, forbidding admission, as it has a right to do, except on condition that it will fulfill all of the requirements of our statutes relating to foreign corporations, one of which is the very law here assailed. When the corporation comes in it agrees to the conditions. They become binding by its assent. The tax or license fee charged by the act of 1865 is one of these conditions. It is imposed as the price of permission to come within the jurisdiction, and not as a tax upon one already within the jurisdiction. * * * This view of the case renders of no importance the argument founded on the word 'tax,' and the distinction sought to be drawn between that and a license fee. Grant that it is properly denominated a tax, yet the payment of a specific tax may be imposed as a condition of assent to fire insurance within the state, and, as we have seen, has been so imposed by express and positive law."

This statute has already been construed and its manifest purpose has been set forth in the case of Fire Department v. Stanton, 159 N. Y. 225, 54 N. E. 28. In that case the court said:

"The obvious purpose of this legislation was to promote and to strengthen the development of domestic corporations, by removing the element of an unfair competition on the part of corporations, or associations, organized in other states; and an additional politic purpose may have been in the direction of a promotion of the safety of the citizen in insuring."

In another part of the well-considered opinion may be read:

"It may be observed that the statute imposes, not exactly a tax, but a license fee, to be paid by those persons who, as agents, seek to build up a fire insurance business in the city of New York for principals who have not incorporated under the state laws."

[2] The first objection of the defendant to be considered is whether or not the charter provision embraces the term "reinsurance," as well as the term "insurance." The section reads that the agent shall pay "for any insurance against loss or injury by fire in the city effected or agreed to be effected or promised by him as such agent." It would seem that the word "any" is sufficiently broad to take in every form of insurance against loss or injury by fire, especially since the term "reinsurance" is defined to be a contract that one insurer makes with another to protect the first from the risk he has already assumed. People ex rel. Continental Ins. Co. v. Miller, 177 N. Y. 521, 70 N. E. 10; Imperial Fire Ins. Co. v. Coos County, 151 U. S. 452, 14 Sup. Ct. 379, 38 L. Ed. 231; Matter of Western Assur. Co., 68 Fed. 708, 15 C. C. A. 619; Hone v. Mutual Safety Ins. Co., 3 N. Y. Super. Ct. 139; London Assur. Co. v. Thompson, 170 N. Y. 99, 62 N. E.

1066. In the case of People ex rel. Continental Ins. Co. v. Miller, supra, it is stated:

"The word 'reinsurance,' as used in the statute (Tax Law [Consol. Laws, c. 60] § 187), in so far as it applies to the relator, refers to the premiums received by it for reinsuring the risks of other companies. The test here, the same as in the first question discussed, is the business done by the company in using the privilege for which the tax is imposed. When it causes its own risks to be reinsured by another company it is not, so far as that act is concerned, doing an insurance business; but when it reinsures the risks of other companies it is doing an insurance business, and should, according to the statute, be taxed for the privilege."

In that case it was held that the relator, a domestic fire insurance corporation, under section 178 of the Tax Law, was required to pay to the state 1 per cent. per annum on the gross amount of the premiums collected, and that the sums paid to other companies for reinsuring its own risks should not be deducted from such amount. It has been further held in the case of Hone v. Mutual Safety Ins. Co., supra, as follows:

"In this instance the word 'reinsure' has a definite meaning, settled in the law for two centuries past, and having the same meaning in its ordinary and popular sense. It is equally effective with the word 'insure,' and it has been decided that 'insure' may be used in a policy of reinsurance with the same force and validity. * * * When the insurer for some reason finds it convenient that another shall bear either in whole or in part the liability to the insured which he has assumed, and agrees with another to assume the whole or part of his liability with reference to the insured, it is termed a contract of reinsurance."

I am disposed to hold that the word "insurance" has no narrow or restrictive meaning, and that it takes in any form of fire insurance; to hold otherwise would be in effect to defeat the purpose of the statute.

The defendant further claims that the section of the charter does not by its terms apply to the agent of a reinsurance company, and providing for a tax, as it does, that it may not be amplified by implication. But it has been held that the statute imposes, not precisely a tax, but a license fee, to be paid by those persons who as agents seek to build up the fire insurance business in the city of New York for principals who have not incorporated in this state. Fire Dept. v. Stanton, supra. Moreover, the statute should be construed with reference to the purpose of the Legislature in enacting it; that purpose was to strengthen the development of domestic corporations engaging in the business of fire insurance in this state, and to remove therefrom unfair competition on the part of corporations or associations organized in other states. A statute is to be construed so as to give it an interpretation not inconsistent with the purposes of the act. The Emily and the Caroline, 9 Wheat. 381, 6 L. Ed. 116; Hubbard v. Brainard, 35 Conn. 563.

Under section 187 of the Tax Law a domestic fire insurance company must pay to the state an annual tax of 1 per cent. on all premiums of insurance and reinsurance, while foreign fire insurance companies pay to the state but five-tenths of 1 per cent. on all premiums of insurance and reinsurance, in addition to all other fees, licenses,

or taxes imposed by that or any other law. If the defendant's contention be sound, that under the provisions of section 799 of the charter no tax or license fee is to be paid to the city of New York by the agents of foreign fire insurance companies on policies of reinsurance, the purpose of the statute would be defeated. It is significant that under section 187 of the Tax Law there is this provision:

"The taxes imposed by this section shall be in addition to all other fees, licenses or taxes imposed by this or any other law. * * * "

Nor would a construction of section 799 of the charter, as claimed by the defendant, result in double taxation. In People v. Home Ins. Co., 92 N. Y. 328, it was held that the Legislature may, in its discretion, impose unequal or double taxes. The court, at page 347, said:

"In performing the duty of levying taxes for the support of government, state Legislatures may, in the exercise of their undoubted power, impose double taxes or lay burdens beyond the financial capacity of the classes taxed, and, however impolitic or unwise such a course would be, the courts have no right to interfere with the exercise of the legislative discretion [citing cases]. Such questions properly belong to the legislative branch of the government, whose exclusive duty it is to apportion and impose the taxes required for the use of the government."

[3] Finally, with respect to the question of agency, I think, there is no doubt that the defendant was the agent of the Munich Reinsurance Company within the meaning of the statute. It reads:

"The term 'agent' in this chapter shall include an acknowledged agent or surveyor or any other person who shall in any manner aid in transacting the insurance business of any insurance corporation not incorporated by the laws of the state, and any broker whose business, in whole or in part, is to negotiate for and place risks, deliver the policies covering the same and collect premiums therefor."

In the case of Fire Department v. Stanton, supra, the defendant claimed that he was the general manager of the "American Lloyds," and that he did not effect or receive premiums. He claimed that they were effected through brokers, and the premiums therefor were paid to the underwriters. He was sued for a percentage of the premiums received by him under section 799 of the Greater New York Charter. In its opinion the court said:

"But this objection is disposed of by the finding of the trial judge that the defendant acted as agent for the association of underwriters in question and received premiums for effecting insurance. This finding is not only justified by the evidence, but partly by the averment in the answer that 'as general manager and attorney in fact * * * he has received premiums of insurance effected on property in the city of New York.' "

The defendant herein testified that he was the United States manager of the Munich Reinsurance Company and the sole representative of that company in the United States, except a board of trustees, who had nothing to do with the transaction of the general business of the company; that he maintained an office in the city of New York; that he negotiated with the representatives of direct insurance companies and agreed with them upon the terms that were placed in insurance contracts or treaties; that he signed them as manager; that he did many other acts which unquestionably indicate that he was

the agent of the Munich Reinsurance Company, and effected policies of fire insurance in behalf of that company in the city of New York.

I am satisfied, in conclusion, that the statute in question should be construed so as to require the agents of foreign fire insurance companies to pay the percentage provided on all policies of reinsurance as well as on all policies of direct insurance. By such construction the purposes of the act would be fulfilled and the intention of the Legislature to discriminate against foreign companies would be established.

Judgment for the plaintiff for an accounting, as demanded in the complaint.

Judgment for plaintiff.